IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ANTONIO PARKER,

                Plaintiff,                OPINION AND ORDER

v.

                                         21-cv-509-wmc

CHRISTINE HOLMEN and
LORETTA JOHNSON,

                Defendants.

Plaintiff Antonio Parker, who is currently incarcerated at Columbia Correctional Institution ("Columbia"), is representing himself in this lawsuit against nurses Loretta Johnson and Christine Holmen. Parker asserts that Johnson and Holmen violated his Eighth Amendment rights after learning that a correctional officer had given him the wrong medication. The court previously granted Parker leave to proceed against both defendants on claims of deliberate indifference to a serious medical need. The parties have cross-moved for summary judgment. (Dkt. ##112, 127.) Because the undisputed evidence would not permit a reasonable jury to find that defendants acted with deliberate indifference to Parker's condition, the court will grant their motion and deny Parker's motion.

UNDISPUTED FACTS[1]

During all times relevant to this lawsuit, Parker was in the custody of the Wisconsin Department of Corrections ("DOC") at Columbia, where defendants Holmen and Johnson were each employed as a "Nurse Clinician 2."

On March 23, 2021, a correctional officer reported to Columbia Sergeant Terstriep that he had mistakenly given Parker the wrong medication, although the officer did not know what medication he had mistakenly given Parker. Sergeant Terstriep then ordered that same officer to get the "medication card," and he returned with a medication card for diphenhydramine (also known as "Benadryl"). Benadryl is used to treat allergy and cold symptoms and is referred to as a "benign" medication, meaning that its effectiveness and side effects are well understood, and it very rarely produces significant potential harms. The most common side effect of Benadryl is sedation, although nausea, vomiting, and diarrhea are also reported side effects.

While the actual medication mistakenly given to Parker is still unknown,[2] Sergeant Terstriep called a nurse, whose name he could not recall but was identified in an incident

---

[1] Unless otherwise noted, the following facts are undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence of record. In particular, while Parker purports to object to many of defendants' proposed findings of fact, only a few have any merit. *See Proc. to be Followed on Mot. For Summ. Judg.*, § II(C), (E). Parker also filed an unauthorized, sur-reply opposing defendants' reply in support of their proposed findings of fact (dkt. #145), which the court has nevertheless considered.

[2] In Parker's inmate complaint, he alleged that the officer mistakenly gave him trazadone, montelukast, and fluconazole (Complaint History (dkt. #43-2) 8), while defendants represent that "neither nurse was provided correct information with respect to what medication Plaintiff had been provided." (Defs.' Resp. to Proposed Findings of Fact (dkt. #139) 9.) As a result, what medication the officer *actually* gave Parker remains unknown on the record before the court at summary judgment.

report as "NC2 Johnson" (dkt. #34-1, at 1), in the Health Services Unit ("HSU") on March 23 to report that an officer had mistakenly given Benadryl to Parker. In response, that nurse advised Terstriep to "continue to monitor" Parker for changes in his condition. (Terstriep Decl. (dkt. #115) ¶¶ 11-12.) According to an incident report, NC2 Johnson also advised that no further medical assessment was needed at that time. (Dkt. #34-1, at 1.)

Nurse Johnson averred that she did not remember the incident. However, if Sergeant Terstriep had told her that Parker was given an allergy medication, Johnson further averred that she would *not* have concluded that Parker needed to be assessed by HSU staff because allergy medications are common over-the-counter drugs with a low risk of serious side effects. (Johnson Decl. (dkt. #116) ¶¶ 6-8.) In contrast, if Terstriep told her that Parker had taken trazodone, montelukast, or fluconazole, Johnson added that her practice would be to make a note in his chart and then contact an advanced care provider. (*Id.* ¶ 11.) After reviewing Parker's medical chart and not seeing such a note, therefore, suggested to Johnson that Terstriep had not reported that Parker took any of those medications. (*Id.* ¶ 12.)

Next, Parker told Columbia Correction Officer Myadze that he had taken the wrong medication, had an adverse reaction, and asked to see a nurse. Later, while Myadze and Nurse Holmen were administering medications, Parker further followed-up to ask Myadze whether he had informed a nurse about Parker's condition. Myadze responded that he had forgotten to talk with a nurse, then told Nurse Holmen, "Oh, I forgot to tell you or let you know that [a Corrections Officer] gave Parker [another inmate's] medications."

3

(Parker Dep. (dkt. #119) 10.) Parker also told Holmen directly that an officer had given him the wrong medication, then asked to be pulled from his cell and checked. (*Id.*) While Parker testified that Holmen only laughed in response and said, "Oh, he'll be all right," Parker also acknowledged that he neither heard anyone tell Holmen what medication he had taken, nor did he feel sick at the time. (*Id.* at 10-11.) For her part, Holmen declares that she does not remember any such report by Officer Myadze or Parker, but that it would have been uncharacteristic of her to respond in that manner. (Holmen Decl. (dkt. #117) ¶¶ 6, 10.)[3] Regardless, sometime after Myadze and Holmen stopped at Parker's cell, Sergeant Terstriep also told Parker that he would investigate the situation, after which an unidentified officer placed a "strap" on Parker's door, leading him to believe that he would be medically assessed but never was. (Parker Dep. (dkt. #119) 11.)[4]

Finally, around midnight of March 23, Parker experienced dizziness, an upset stomach and diarrhea. Concerned that his body was rejecting the medication he was given by mistake, Parker induced vomiting. After that, Parker claims to have lost consciousness and fell, hitting his head on the concrete. However, Nurses Johnson and Holmen did not witness any of those symptoms or his fall, nor is there any evidence from which a reasonable

---

[3] Parker asserts that Nurses Johnson and Holmen committed perjury by stating that they were never informed that he was given the wrong medication, and he disputes that the nurses do not remember the incidents at issue in this lawsuit. However, Parker provides no evidence that the nurses perjured themselves, particularly when the nurses only stated that they did not remember the incident, and he lacks personal knowledge to dispute what they remembered.

[4] Parker also argues that the defendants should identify "John Doe #4," the still unidentified officer who put the strap on plaintiff's door, and apparently, in the alternative, to assume that Sergeant Terstriep was really John Doe #4. The court will not revisit this issue so late in the case, given that: (1) the defendants have represented that they could not identify John Doe #4 (dkt. #38); and (2) the court concluded that plaintiff was not entitled to further discovery to identify Doe defendants. (Dkt. #40.)

jury could find that they were later made aware of his symptoms or fall. After experiencing these medical issues, Parker told Corrections staffers that he was "kind of messed up" and needed to see a nurse, but staff did not contact a nurse. (*Id.* at 15.)

OPINION

Plaintiff emphasizes the facts that: a correctional officer gave him pills that were not prescribed to him; and he eventually fell and hit his head. As a result, plaintiff further argues that Johnson and Holmen violated nursing protocols and DOC policies by not *immediately* removing him from his cell and performing a medical assessment after learning that an officer had given him the wrong medication. Defendants point out that neither fact is sufficient for a reasonable jury to find that *they personally* violated any protocol or policy, much less the Eighth Amendment deliberate indifference clause. Even more specifically, defendants argue that plaintiff has neither offered sufficient evidence to find that he suffered an objectively serious medical condition, nor in the alternative, that defendants' individual responses amounted to deliberate indifference, where Nurse Johnson had every reason to believe that plaintiff had mistakenly ingested Benadryl, a safe medication, and Nurse Holmen only knew that he had taken the "wrong" medication.

The Eighth Amendment gives prisoners the right to receive adequate medical care. *Estelle v. Gamble*, 429 U.S. 97 (1976). It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* at 104 (quotation marks and citation omitted). To prevail on a claim of constitutionally inadequate medical care, therefore, an inmate must demonstrate two elements: (1) an objectively serious medical condition; and

5

(2) a state official who was deliberately (that is, subjectively) indifferent to the risks presented by that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011); *see also Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997) ("deliberate indifference" satisfied upon proof that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it). Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court evaluates each motion separately, construing the facts and drawing all reasonable inferences from those facts in favor of the nonmoving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). The court must grant summary judgment when no reasonable jury could find for the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), as is the case here.

As an initial matter, defendants assert that plaintiff has not established that he suffered an objectively serious medical condition, having offered no evidence that any arguable harm done from the original medication error was serious or lasting. As defendants emphasize, the court previously held "a reasonable jury would not conclude that the temporary symptoms of shakiness, lightheadedness and diarrhea experienced by plaintiff placed him at a substantial risk of serious harm, even if he later fell because he was lightheaded." *Brown v. Cascadden*, No. 18-cv-483-BBC, 2019 WL 6174365, at *3 (W.D. Wis. Nov. 20, 2019). While plaintiff responds that he suffered an objectively serious medical injury because he fell *and* hit his head, this case is very close on its facts to

6

that found insufficient in *Brown*. However, the court need not determine whether plaintiff has produced sufficient evidence of an objectively serious medical condition, because no reasonable jury could conclude that either defendant acted with deliberate indifference.

Deliberate indifference constitutes *more than* negligent acts, or even grossly negligent acts, although it requires something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The threshold for deliberate indifference is met where, among other situations, "the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. Because these defendants are medical professionals, the relevant question under the Eighth Amendment is whether their actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Nothing in this record supports finding the lack of exercise of medical judgment.

"Administering the wrong medication may well pose a substantial risk of harm, depending on the circumstances." *Robbins v. Waupun Corr. Inst.*, No. 16-CV-1128, 2016 WL 5921822, at *3 (E.D. Wis. Oct. 11, 2016). Here, however, the circumstances of the nurses' respective interactions with plaintiff would not allow a reasonable jury to find that either nurse ignored that risk. Specifically, assuming that Nurse Johnson answered Sergeant Terstriep's call at all, no reasonable jury could find that she acted with deliberate indifference by recommending that staff merely continue monitoring plaintiff having been told that the plaintiff had been incorrectly given Benadryl, which had well-understood and limited side effects. Similarly, as to Nurse Holmen, no reasonable jury could find that she

7

acted with deliberate indifference having only been told by plaintiff that an officer had given him the "wrong medication," but not telling her what medication he had taken, nor that he was experiencing *any* symptoms after taking it. Indeed, it is undisputed that plaintiff had *no* symptoms when he spoke with Nurse Holmen. Even accepting that when plaintiff informed her that he had taken the wrong medication, Nurse Holmen allegedly laughed before observing, "Oh, he'll be all right," unprofessional behavior alone is not enough to show deliberate indifference. *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (unprofessional conduct does not violate the Constitution). Further, accepting that plaintiff experienced frightening symptoms later that evening, it is undisputed that neither defendant witnessed him experiencing those symptoms, nor was it reported to them.

Finally, plaintiff asserts that Nurses Johnson and Holmen violated various DOC policies, including the "Medication Occurrence Reporting" policy, by not giving him an immediate medical check after learning that he had taken the wrong medication, but such a violation would not give rise to a constitutional claim absent evidence that defendant had reason to believe the drug mistakenly administered was dangerous or plaintiff was experiencing possible serious side effects. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of . . . departmental regulations").

Because no reasonable jury would find that defendants acted with deliberate indifference to a substantial risk of serious harm, they are entitled to summary judgment, and plaintiff's motion for summary judgment must be denied.

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #112) is GRANTED.

2) Plaintiff's motion for summary judgment (dkt. #127) is DENIED.

3) The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 30th day of August, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge